UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.

                                                              Criminal No. 06-20662
                                                              Civil No. 11-11137

PATRICK HARRINGTON,                    HONORABLE AVERN COHN

    Defendant-Petitioner.

_____/

## MEMORANDUM AND ORDER
## DENYING PETITIONER'S MOTION TO VACATE SENTENCE
## UNDER 28 USC §2255

I. Introduction

This is a *pro se* motion to vacate sentence under 28 U.S.C. § 2255. Petitioner, Patrick Harrington, contends that the 120 month sentence imposed on him following his guilty plea to violations of 18 U.S.C. §§ 371 and 1623 was in violation of his constitutional rights. Specifically, petitioner contends that he was deprived of his Sixth Amendment right to counsel because his trial counsel was ineffective. For the reasons that follow, the motion is DENIED.

II. Background

The background of the offense and petitioner's sentence are described in the Court's Sentencing Memorandum. United States v. Harrington, 2008 WL 4997606 (E.D. Mich. Nov. 21 2008) (unpublished), and in the decision of the Court of Appeals for the Sixth Circuit affirming petitioner's sentence. United States v. Harrington, 367 Fed. App'x. 657 (6th Cir. 2010). As described by the Sixth Circuit:

From 2001 until 2006, Harrington was an executive vice president of Business Loan Express, LLC ("BLX") and manager of its Troy, Michigan office. During Harrington's tenure, BLX was a preferred lender under the guaranteed-loan program operated by the Small Business Association ("SBA"), meaning that the SBA delegated loan approval, closing, and servicing authority to BLX. As a BLX executive vice president and manager, Harrington performed and oversaw these services on behalf of the SBA.

Harrington used his position at BLX to carry out a fraudulent loan scheme. The scheme worked as follows. Typically, the fraudulent loans involved one to five individuals or groups of individuals (brokers) who orchestrated the purchase and resale of gas stations, convenience stores, party stores, restaurants, or small motels. A broker would locate, and sometimes buy, the property and then find a person to buy the property at an inflated price using an SBA-guaranteed loan issued by BLX. In some instances, the purchaser was truly interested; in others, the purchaser was a "straw buyer" who did not intend to operate the business or make loan payments but was promised payment by the broker to serve as the buyer. In order to qualify the buyers for SBA-guaranteed loans, Harrington, the brokers, and the buyers would misrepresent the buyers' financial status or work experience, misrepresent whether the buyer was a United States citizen, conceal and cover-up the fact that someone other than the alleged buyer was going to be the beneficial owner or operate the business, overstate the value of the property, and fraudulently document that the buyer made the required equity-injection payments. The broker profited from the mark-up in the price of the property by receiving a percentage of the purchase price. Harrington profited because his compensation was based, in part, on the number and amount of loans he originated. In all, Harrington fraudulently originated and issued eighty-nine SBA-guaranteed loans and two loans with Community South Bank. The total amount of unlawfully obtained loans was $84,949,000.00.

In addition to the fraudulent loan scheme, Harrington knowingly made a false, material declaration under oath before a grand jury that was investigating SBA loan fraud. Harrington answered questions related to a BLX-issued, SBA-guaranteed loan, claiming to have no knowledge that

> the declarations used to satisfy the equity-injection requirement of the loan were fraudulent. In truth, which Harrington knew, the loan packages relied on fraudulent documentation.

367 Fed. App'x at 658. Regarding his sentence, the Sixth Circuit stated:

> The United States Probation Office . . . prepared a presentence report ("PSR") and calculated the applicable sentencing range. For the conspiracy charge, the base level offense was six. Because the loss or intended loss attributed to Harrington was between $20,000,000 and $50,000,000, the base offense level was increased by twenty-two levels. Next, the enhancement in U.S.S.G. §3B1.1 was applied and the offense level was increased by four because Harrington was an organizer or leader of a criminal activity. In addition, the offense level was increased by two pursuant to U.S.S.G. §3B1.3 because Harrington "abused a position of public or private trust." Thus, the adjusted offense level for the conspiracy charge was thirty-four. The PSR also calculated an offense level of fourteen for the false declarations charge, with no adjustments. Next, the PSR applied the multiple-count adjustment, which meant that thirty-four became the adjusted offense level. Finally, the PSR deducted three levels for acceptance of responsibility. Because Harrington has no criminal history, he was placed in a Criminal History Category I. Based on a total offense level of thirty-one and a Criminal History Category I, the PSR calculated the guideline range at 108 to 135 months. However, because each count carries a maximum sentence of five years, the PSR reduced the top of the guideline range to 120 months.
>
> At the sentencing hearing, Harrington's counsel argued that the leader-of-criminal-activity enhancement and the abuse-of-trust enhancement were inappropriate. The district court disagreed, accepted the PSR-calculated guideline range, and sentenced Harrington to 120 months of imprisonment, to be followed by two years of supervised release.

*Id.* at 659.

Neither at sentencing nor on appeal did petitioner take exception to or challenge

the 22 level increase in the base offense level because the loss or intended loss attributed to him was between $20,000,000 and $50,000,000. That is for good reason. Attached as Exhibit A is a schedule of relevant information regarding the fraudulent loans which establishes the Total Projected Loss as of July 25, 2008 at $33,439,043.61 which was attached to the government's sentencing memorandum (Doc. 29-3). Earlier, on June 16, 2008, in a letter to the assistant United States attorney representing the government, counsel described in detail the losses suffered on 89 identified loans as between $30,362,654 and $32,168,841.

### III. The Law

Title 28 U.S.C. § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States. . .or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

To prevail under § 2255, petitioner must show a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Timmreck*, 441 U.S. 780, 783 (1979) (*quoting*, *Hill v. United States*, 368 U.S. 424, 428 (1962)).

In order to succeed on a claim of ineffective assistance of counsel, petitioner must show (1) that his counsel's performance was constitutionally deficient in that the performance "fell below an objective standard of reasonableness under prevailing professional norms" and (2) that he was prejudiced by his counsel's errors. *Magana v. Hofbauer*, 263 F.3d 542, 547 (6th Cir. 2001) (*citing Strickland v. Washington*, 466 U.S.

4

668, 687-88 (1984)). In order to establish prejudice, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The *Strickland* analysis also applies to claims of ineffective assistance of counsel involving counsel's advice offered during the plea process." *Magana*, 263 F.3d at 547 (*quoting*, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

## IV. Petitioner's Claims

Petitioner claims his counsel was ineffective in two respects. First, he says his counsel acquiesced to a loss calculation that failed to apportion the losses suffered on the defaulted loans from intervening causes, such as the recession of 2008, and market losses that SBA and BLX would have incurred, in any event, because of "inherently risky" loan practices. Petitioner says he was prejudiced because the Court improperly imputed the $32,000,000 in losses indiscriminately, which enhanced the base level of his offenses by 22 levels.

Second, petitioner says that counsel failed to offer evidence that would have established that he neither led nor organized the conspiracy, nor abused his position of trust during the course of the fraudulent conduct. Petitioner argues that as a result of these omissions, he was prejudiced when this Court additionally enhanced the base offense level by 4 and 2 levels, respectively.

## V. Discussion

### A.

#### 1.

There is no merit in petitioner's assertion that his counsel acquiesced to the loss

calculation, and failed to argue that the losses suffered by the SBA should have been apportioned to his conduct, and apportioned based on the recession of 2008 and the market losses that occurred. Putting aside that the recession and attendant market loses cannot be characterized as intervening acts, apportionment would have been directly contrary to petitioner's acknowledgment of responsibility, as reflected in Count One of the Information to which he pled guilty, which reads in part:

> Harrington was an Executive Vice President of Business Loan Express ("BLX") and headed up the Troy, Michigan, office of BLX. BLX (or its wholly owned subsidiary, Business Loan Center) originated, sold, and serviced loans under the SBA's guaranteed loan program. BLX was one of the country's largest SBA lenders.
>
> Harrington and his co-conspirators knowingly caused BLX to fraudulently originate and issue SBA-guaranteed loans to small businesses, typically for the purchase of gas stations, small motels, and restaurants, by knowingly and wilfully making and using material misrepresentations in the loan applications and supporting documents. The misrepresentations included, among other things, the financial qualifications, personal history, and citizenship status of the loan applicants, the amount of equity that was being contributed to the small business by the loan applicant (i.e. the "equity injection," which was required for the SBA loan), and the value of the property being purchased.

Additionally, apportionment would have been contrary to petitioner's Rule 11 Plea Agreement, which reads in part:

> The defendant stipulates that all of the factual allegations set forth in Counts 1 and 2 of the information are accurate and true.

Finally, apportionment would have been contrary to what petitioner said to the Court at his arraignment and plea hearing:

> THE COURT: Tell me about Count 1. What did you do?

6

>DEFENDANT: . . .with others I knowingly allowed fraudulent documentation to be submitted to the SBA to obtain loans.
>
>\* \* \*
>
>THE COURT: What about Count 2?
>
>DEFENDANT: I knowingly made a false statement to a grand jury.

2.

Petitioner's counsel at sentencing did not act unreasonably in not objecting to the amount of loss described in the presentence report. As stated by the government in its Response and Brief to Motion to Vacate Sentence (Doc. 57) at p. 6:

>When Harrington was interviewed by FBI agents in September 2006, a month after the Troy office of BLX closed, he admitted he knowingly processed 96 fraudulent loans – including the loans for which he was eventually held criminally responsible. (R. 29: United States' Sentencing Memo). The PSR did not attribute loss for loans that had been repaid or were reasonably expected to be repaid, only for defaulted loans or those expected to default. No defense lawyer would have been able to convince a court that Harrington was not responsible for actual losses resulting from fraudulent loans he admitted facilitating or that the losses would inevitably have occurred even without Harrington's activity. Harrington was the one person essential to the scheme. Nor has Harrington presented any case – before or since his sentencing – holding that the amount of loss attributable to a defaulted loan must be reduced by the portion of loss attributable to a poor economy.

3.

Petitioner's reliance on *United States v. Rothwell*, 387 F3d 579 (6th Cir. 2004) is misplaced. *Rothwell* involved a SBA loan. The similarity ends there. In *Rothwell*, the SBA made a bad business decision when it apparently overestimated the value of the

property supporting a loan to Rothwell were he to default on it.  Thus, the SBA assumed the foreseeable risk that it was mistaken in its estimation, and was consequently held by the Sixth Circuit to be responsible when the losses related to Rothwell's eventual default manifested.  The money that Rothwell fraudulently obtained during the course of the loans represented progress payments.  Rothwell voluntarily replaced these advances by putting other funds into the property long before defaulting.  These monies were causally unrelated to SBA's original advance and subsequent loss.  The same cannot be said of the losses here, which petitioner admitted he caused.

Overall, petitioner's counsel's failure to argue for apportionment of responsibility for the losses suffered by the SBA did not fall below an objective standard of practice, and did not prejudice petitioner.

B.

Petitioner's second claim for relief, *i.e.*, counsel's failure to properly argue against the role enhancements to his offense level also lacks merit.

1.

In support of this claim, petitioner refers to what he believes is evidence that establishes his role as having been that of a mere "platoon leader" in a "commander's battle plan" of fraud.  Petitioner argues that, this having been the case, he was not a leader in the scheme, that the SBA consented to his actions, that he therefore did not abuse its trust, and that the subsequent corresponding sentence-enhancements were excessive.

2.

Petitioner was not prejudiced by his counsel's not having made the claim that the

SBA and BLX were engaged in a national scheme in which petitioner was but a local operative, who neither led or organized the conspiracy, nor abused a position of trust. Even if counsel had made this argument, the role-in-the-offense enhancement would not have been affected. The court of appeals' affirmance of the enhancements makes that clear.

3.

Petitioner also cites (1) an Inspector General report stating that SBA failed to adequately supervise BLX's loans; (2) a *qui tam* claim by an employee of an investment management firm ("Greenlight") alleging that a Georgia-based BLX branch engaged in fraudulent lending practices; (3) and the congressional testimony of a Greenlight executive also asserting that BLX engaged in fraudulent lending.

None of these materials advance petitioner's claim. First, this evidence, if it can be called that, is no more than opinion and allegation. Second, even if these opinions and allegations have some truth, there is nothing to mitigate petitioner's role and culpability. As an executive vice president, petitioner's compensation was keyed to the volume of loans generated by BLX. There is no evidence that petitioner's role in the millions of dollars of loans that are the predicate for the losses suffered by the SBA was subordinate to anyone higher in the executive hierarchy of BLX.

Third, petitioner's position is contradicted by his prior assertions in his October 27, 2008, letter to the Court wherein he maintained he knew nothing of his superior's practices so that he could provide assistance to the government in order to obtain a "substantial assistance" motion. Petitioner cannot now contend that his counsel should have argued that his superiors had ordered him, or gave their consent to defraud. In

addition, whether or not SBA employees were negligent in their supervisory roles of BLX is immaterial.

Lastly, nothing in the guidelines suggest that the enhancements should not be applied if there were others who participated in a national scheme to defraud.

Petitioner's counsel's alleged lack of proper representation with respect to petitioner's role-in-the-offense did not fall below an objective standard of practice to prejudice petitioner.

## VI. Conclusion

Petitioner was represented by competent counsel. The record reflects petitioner's counsel did all they could to mitigate his sentence. The 120 month sentence imposed on defendant was the result of his wrongful conduct, and consistent with the level of his culpability. Overall, petitioner has not demonstrated that he is entitled to relief under § 2255.

SO ORDERED.


Dated:  June 22, 2011            S/Avern Cohn
                                 AVERN COHN
                                 UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to Patrick Harrington, 41047-039, Ashland Federal Correctional Institution, Inmate Mail/Parcels, P.O. Box 6001, Ashland, KY 41105 and the attorneys of record on this date, June 22, 2011, by electronic and/or ordinary mail.


                                 S/Julie Owens
                                 Case Manager, (313) 234-5160